# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:15-CV-00851-TBR

MARY KEY,                                                            Plaintiff,

v.

UNICARE, *et al.*,                                             Defendants.

## MEMORANDUM OPINION

The following opinion sorts out just one of many strands in the tapestry of this litigation. The pertinent thread relates to the Ford Motor Company-UAW Retirement Plan Board of Administration's effort to recoup an overpayment made to Mary Key, a former employee of the Ford Motor Company. Key takes issue with the Retirement Board's refusal to grant her hardship treatment and, as a result, filed a denial-of-benefits claim under the Employee Retirement Income Security Act of 1974. In response, the Retirement Board counterclaimed for recoupment of the overpayment at issue. Now, Ford and the Retirement Board move for summary judgment on each claim. Key opposes that motion. For the following reasons, Ford and the Retirement Board's Motion for Summary Judgment, [R. 30], is **GRANTED**.

### I.

### A.

Mary Key was an employee of the Ford Motor Company ("Ford"). In January 2014, the Ford Motor Company-UAW Retirement Plan Board of Administration ("Retirement Board") approved her application for disability retirement benefits to commence effective August 1, 2013 in the amount of $994.52 per month. [A.R. at 90, 144.]

In April 2014, Key wrote a letter to the Retirement Board in which she notified it that her claim for Social Security disability insurance ("SSDI") benefits had been denied. [*Id.* at 197.] She requested that the Retirement Board provide her with temporary benefits pending resolution of her claim for SSDI. [*Id.*]

A temporary benefit under the UAW-Ford Retirement Plan ("Plan") operates as an advance to aid a claimant while his or her SSDI claim is pending. Under the Plan, a temporary benefit is payable only if the claimant

> provide[s] evidence that [she has] applied for Social Security Disability benefits and [the] application was denied. This benefit begins when [the claimant] retires . . . . If [the claimant] become[s] eligible to receive a Social Security disability benefit . . . , [the] Temporary Benefit stops.

[R. 29-2 at 25 (Summary Plan Description).] If the Social Security Administration ("SSA") ultimately approves the SSDI claim, then the claimant must repay the temporary benefit within thirty days of written notice of the SSDI award. [*Id.* at 26.] Should the claimant fail to do so, the Retirement Board retains the right to recoup the amount overdue from the claimant's future benefit payments. [*Id.*]

Key supplied the necessary proof that her SSDI claim had been denied in April 2014. [A.R. at 183.] Accordingly, the Retirement Board recalculated her monthly benefits to include a temporary benefit payment. [*Id.*] The temporary benefit payment was for an additional $274.58 in August 2013, which increased to $945.76 for each subsequent month. [*Id.* at 90.] Between August 2013 and June 2015, the Retirement Board paid Key a temporary benefit payment totaling $21,081.30. [*Id.*]

The Retirement Board ceased making the temporary benefit payment once the SSA approved Key's SSDI claim. [*Id.* at 177–79.] On May 4, 2015, the SSA advised that Key would receive a check for $39,445.20 for past-due benefits. [*Id.* at 177.] On

2

July 1, the Retirement Board wrote a letter to Key notifying her that she must repay the temporary benefit overpayment no later than August 15, 2015. [*Id.* at 90.] If she did not do so, the Retirement Board informed Key that it would withhold one-half of her future monthly benefit payments until it recouped the balance. [*Id.*]

Instead of paying the balance, Key filed a hardship appeal on July 27, 2015. [*Id.* at 171–76.] The appeals process became somewhat complicated by, among other things, Key's failure to file additional requested information. [*Id.* at 170.] Ultimately, on September 20, 2016, the Retirement Board denied the hardship appeal. [*Id.* at 5–6.] It concluded that Key had "sufficient assets," such as $103,837.16 in a Tax-Efficient Savings Plan for Hourly Employees account, "to pay the overpayment." [*Id.* at 5, 9.]

**B.**

On August 19, 2015, Key filed this action against, *inter alia*, Ford and the Retirement Board. [R. 1-1 at 5, ¶¶ 3–4 (Complaint).] Although not entirely clear from the complaint, she appears to bring a denial-of-benefits claim under the Employee Retirement Income Security Act of 1974. [*Id.* at 7, ¶¶ 27–29.] Ford and the Retirement Board responded with a counterclaim for recoupment of the overpayment. [R. 9 at 5 (Counterclaim).] Now, Ford and the Retirement Board move for summary judgment on each claim. [R. 30 (Motion for Summary Judgment).] Key opposes that motion.[1] [R. 31 (Response).]

---

[1] In a related motion, Mary Key asks for leave to conduct additional discovery too. [R. 32 (Motion for Leave).] The sole justification for the motion is that the administrative record does not contain a copy of the UAW-Ford Retirement Plan ("Plan"). [*Id.* at 2, ¶ 4.] However, it would appear that Key's counsel received a complete copy of the Plan during the initial disclosure process. [*See* R. 37-1 at 1–5 (Correspondence).] Key does not appear to contest that point either. Accordingly, the Court denies Key's motion for leave to conduct additional discovery.

**II.**

ERISA creates a private cause of action to recover benefits alleged to be due under a benefit plan. 29 U.S.C. § 1132(a)(1)(B). When a plan grants the administrator discretionary authority to interpret its terms and to determine benefits, the Court may only reverse the administrator's determination if it is "arbitrary and capricious." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Because the Plan at issue granted the Retirement Board the authority "to pass upon all questions concerning the application or interpretation of the provisions of the Plan," [R. 35-1 at 103, art. VII, § 3 (Retirement Plan)], the arbitrary-and-capricious standard applies, *see Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 296 (6th Cir. 2011). Under that standard, the Court will uphold "the plan administrator's decision if it is 'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" *Shaw v. AT & T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015) (quoting *DeLisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009)).

**III.**

The precise cause of action pleaded in Key's complaint is not altogether clear, but it appears as though she objects to the Retirement Board's denial of her request for hardship treatment as arbitrary and capricious under 29 U.S.C. § 1132(a)(1)(B). [*See* R. 31 at 4–8.] Ford and the Retirement Board move for summary judgment on that claim. In their view, substantial evidence supported the denial of Key's request for hardship treatment. [R. 30-1 at 5–7 (Memorandum in Support).] For much the same reason, Ford

and the Retirement Board ask for summary judgment on their counterclaim for recoupment under 29 U.S.C. § 1132(a)(3)(B)(ii). [*Id.* at 8.] Having reviewed the record before it, the Court finds summary judgment in Ford and the Retirement Board's favor to be warranted.

**A.**

The right of a pension plan to recover benefit overpayments is well established. *See Best v. Cyrus*, 310 F.3d 932, 935–36 (6th Cir. 2002); *Butler v. Aetna U.S. Healthcare, Inc.*, 109 F. Supp. 2d 856, 861 (S.D. Ohio 2000) (collecting cases). Before pursuing recoupment, however, a plan must "balance the impact of overpayments upon plan beneficiaries at large against the equitable treatment of the individuals from whom overpayments are sought." *Johnson v. Ret. Program Plan for Emp. of Certain Emp'rs at U.S. Dep't of Energy Facilities at Oak Ridge, Tenn.*, No. 3:05-CV-588, 2007 WL 649280, at *6 (E.D. Tenn. Feb. 27, 2007) (citing *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244 (6th Cir. 1991)). It does so with reference to the following factors:

> [1] the beneficiary's disposition of the money which he was overpaid, [2] the amount of the overpayment, [3] the nature of the mistake made by the administrator, [4] the amount of time which has passed since the overpayment was made, and [5] the beneficiary's total amount of income and the effect recoupment would have on that income.

*Wells*, 950 F.2d at 1251 n.3 (citing *Thorn v. U.S. Steel & Carnegie Steel Pension Fund*, No. CV-P-1829-S, slip op. at 3 n.6 (M.D. Ala. 1983)).

Here, those factors weigh in Ford and the Retirement Board's favor. Key had use of the money at issue. It is true that the amount of the overpayment ($21,081.30) is somewhat large. Nonetheless, the Retirement Board made no mistake: It communicated to Key that the Plan required her to repay any temporary benefit sums after the resolution

of her SSDI claim. Key declined to make the required repayment, and so the Retirement Board sought reimbursement less than two months after the SSA decided to grant Key's claim for SSDI. Most important of all, the Retirement Board considered Key's income and concluded, correctly, that recoupment through an installment-type method (withholding $497.26 per month) will not detrimentally impact her financial situation in light of other assets and the SSDI award. *See Sheward v. Bechtel Jacobs Co. LLC Pension Plan for Grandfathered Emps.*, No. 3:08-CV-428, 2010 WL 841301, at *6 (E.D. Tenn. Mar. 4, 2010). The Court sees no reason to disturb the Ford Motor Company and the Retirement Board's well-supported decision.

**B.**

To the extent Mary Key attempts to raise equitable estoppel as a defense, [*see* R. 31 at 7], the Court is not persuaded. Equitable estoppel applies when a party engages in conduct "inconsistent with a position later adopted that prejudices the rights of the other party who detrimentally relied on the prior conduct." *Horton v. Ford Motor Co.*, 427 F.3d 382, 388 (6th Cir. 2005) (citing *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,* 467 U.S. 51, 59 (1984)). The proponent of equitable estoppel must show:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Id.* (quoting *Tregoning v. Am. Cmty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993)). Key's equitable estoppel defense is meritless because she cannot show an inconsistent statement by the Retirement Board upon which she relied to her detriment.

**IV.**

Key's Motion for Leave, [R. 32], is **DENIED**, and Ford and the Retirement Board's Motion for Summary Judgment, [R. 30], is **GRANTED**. An appropriate order and judgment shall issue.

Date:

cc:     Counsel of Record